IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JAMES DEHOOG, et al,

Case No. 1:15-CV-02250-CL

                    Plaintiffs,

          v.

**REPORT &
RECOMMENDATION**

ANHEUSER-BUSCH INBEV, SA/NV,
and SABMILLER, PLC,

                    Defendants.

_____

CLARKE, Magistrate Judge,

On December 1, 2015 Plaintiffs filed their Complaint (#1), bringing this action against the defendants for violations of Section 7 of the Clayton Act. Plf. Compl. ¶ 1. Both defendants, Anheuser-Busch InBev SA/NV ("ABI") and SABMiller, plc ("SAB"), move, separately, to dismiss the Complaint. For the reasons below, both motions to dismiss (#41) (#43) should be GRANTED.

## BACKGROUND

Plaintiffs are individual citizens of Oregon, Washington, and California. Pl. Compl. Ex. 1 (#1). Each plaintiff has purchased beer produced by one or both of the defendants and expects to continue to purchase beer produced by one or both of the defendants in the future. Pl. Compl. ¶ 8. Plaintiffs are also consumers of craft beer produced in Oregon. *Id.* Defendant ABI is the largest producer and seller of beer in the United States, accounting for approximately 46 percent of the United States market share. Pl. Compl. ¶ 10. Defendant SAB is a multinational brewing and beverage company. Pl. Compl. ¶ 13. SAB operates in the United States and Puerto Rico exclusively through a joint venture with Molson Coors Brewing Company ("Molson"), who is not a named party in this action. Pl. Compl. ¶ 14. The SAB and Molson joint venture, MillerCoors, LLC ("MillerCoors"), is the second-largest producer and seller of beer in the United States, accounting for 25 percent of the United States market share. *Id.* SAB and Molson each hold 50 percent governance rights in MillerCoors. Def. Mot. at 9 (#41). The Department of Justice ("DOJ") approved the MillerCoors joint venture on June 5, 2008. *Id.*

On November 11, 2015, ABI and SAB announced that ABI will acquire the entire share capital of SAB. Pl. Compl. ¶ 17. Concurrent with that announcement, ABI announced an agreement with Molson for complete divestiture of SAB's interest in MillerCoors. Even Decl. Ex. 3 at 1 (#44-3). The transaction is conditional on the completion of ABI's acquisition of SAB. *Id.* Upon completion of the transaction, Molson will acquire SAB's 50 percent voting interest and 58 percent economic interest in MillerCoors, making MillerCoors a wholly-owned subsidiary of Molson. *Id.* Molson will maintain full control of the operations and resulting economic benefits of MillerCoors. *Id.*

Plaintiffs' Complaint alleges that the proposed agreement by ABI to purchase SAB "constitutes a violation of Section 7 of the Clayton Antitrust Act ("Clayton Act"), 15 U.S.C § 18, in that the effect of the proposed acquisition may be substantially to lessen competition, or to tend to create a monopoly in the production and sale of beer in the United States." Pl. Compl. ¶ 100. Plaintiffs specifically allege that the acquisition threatens to cause them "loss and damage in the form of higher beer prices, fewer services, fewer competitive choices, diminished product quality and product diversity, [and] suppression and destruction of smaller competitors through exclusive distribution arrangements . . . " Pl. Compl. ¶ 25. Moreover, Plaintiffs allege that the acquisition of SAB by ABI will "increase ABI's global buying power" and "give [ABI] leverage over the commodities used in brewing beer and many other facets of the beer industry that will likely affect competition in the United States." Pl. Compl. ¶ 54. With regard to Molson's acquisition of SAB's interest in MillerCoors, Plaintiffs allege that "[g]iven the resulting change in management and Molson's new increased size and scope in the United States market following the ABI-SAB acquisition, Molson's management is likely to have incentives to change its practices to match ABI's." Pl. Compl. ¶ 33. Plaintiffs seek to permanently enjoin the acquisition of SAB by ABI. Plf. Compl. ¶ 1.

## STANDARD

Pursuant to Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency

of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

Dismissal under Rule 12(b)(6) is proper "if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (internal citations omitted).

## DISCUSSION

Section 7 of the Clayton Act, 15 U.S.C. § 18, prohibits the acquisition of stocks or assets if the effect of such acquisition "may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. To state a claim under Section 7, "a plaintiff must allege that the acquisition will create an appreciable danger of anticompetitive consequences." *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992, 1003 (N.D. Cal. 2003). To determine if antitrust injury exists, the first step is to define "the relevant geographic and product markets in which the alleged anticompetitive effects occurs." *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 307 (S.D.N.Y. 2003). Defining the relevant market allows the court to determine "whether the defendant has monopoly power in that market, what the area of

competition is, and whether the allegedly unlawful acts have anticompetitive effects in that market." *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 969 (W.D. Tenn. 2004).

Similarly, "monopsony power is market power on the buy side of the market." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320 (2007). The requirements for alleging monopsony under Section 7 mirror those for alleging a monopoly claim: plaintiffs must demonstrate that an acquisition will substantially lessen competition or tend to create a monopsony in some defined product and geographic market and they are, as a result, threatened with loss or damages. *See Weyerhaeuser Co.*, 549 U.S. at 322; Dept. of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines*, § 12 (Apr. 19, 2010).

## I. ABI's Motion to Dismiss should be granted.

Defendant ABI moves this Court for an Order dismissing the Complaint pursuant to Rule 12(b)(6) on the basis that Plaintiffs have failed to state a claim under Section 7 of the Clayton Act. ABI's motion should be granted.

### a. Plaintiffs' Complaint should be dismissed because the allegations admit that ABI's market share in the United States will be unaffected by the proposed acquisition.

As discussed above, Section 7 prohibits a corporation from acquiring the whole or any part of a business's stock or assets if the effect of the acquisition "may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. Substantial competitive harm may result if an acquisition creates or enhances an entity's "market power." *See Eastman Kodak Co. v. Image Tech. Servs. Inc.*, 504 U.S. 451, 464 (1992); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir.1995). To determine whether an acquisition will create or enhance "market power" in violation of Section 7, a party must adequately allege that "the merger would produce 'a firm controlling an undue percentage share of the relevant market, and [would] result . . . in a significant increase in the concentration of firms in the market.'" *F.T.C. v. H.J. Heinz*

Page 5 – REPORT & RECOMMENDATION

*Co.*, 246 F.3d 708, 715 (D.C. Cir. 2001) (quoting *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 363 (1963)). Moreover, a party must adequately allege that "at the time of suit, there was a reasonable probability that the acquisition may lead to a restraint [on competition] or a monopoly." *United States v. Phillips Petroleum Co.*, 367 F. Supp. 1226, 1261 (C.D. Cal. 1973).

Plaintiffs' allegation that ABI's market power in the United States will increase is contradicted by their acknowledgment that the proposed acquisition includes the complete divestiture of SAB's market share in the United States. Pl. Compl. ¶ 33. Plaintiffs concede that Molson will obtain 100 percent ownership of SAB's market share in the United States. Pl. Compl. ¶¶ 33-34. On the face of the complaint, therefore, Plaintiffs have not adequately alleged that there is a reasonable probability that the proposed acquisition will increase ABI's market power and thereby lessen competition or create a monopoly in the United States beer market.

Recently, in *Edstrom v. Anheuser-Busch InBev SA/NV*, a district court in the Ninth Circuit considered an acquisition that closely mirrors the proposed acquisition at issue in this case. *Edstrom v. Anheuser-Busch InBev SA/NV*, No. C 13-1309, 2013 WL 5124149 (N.D. Cal. Sept. 13, 2013)[1]. In that acquisition, ABI acquired full ownership of Grupo Modelo, S.A.B. de C.V. ("Modelo"), and at the same time sold Modelo's United States business to Constellation Brands, Inc. ("Constellation"). *Id.* As a result, Constellation became an independent brewer and the exclusive seller of Modelo beer brands in the United States. *Id.* The court determined that under the terms of that transaction, ABI's percentage share of the United States market did not increase. *Id.* at *5. For this reason, the court held that plaintiffs failed to adequately allege that ABI's market power would increase as a result of the acquisition. Although there are

_____

[1] The United States Court of Appeals for the Ninth Circuit affirmed in an unpublished decision. *Edstrom v. Anheuser-Busch InBev SA/NV*, ___ F. App'x ___, No. 14-15337, 2016 WL 1297380 (9th Cir. April 4, 2016).

postural differences between *Edstrom* and this case, the fundamental reasons for dismissal are the same. Like in *Edstrom*, ABI's percentage share in the United States market will not change as a result of ABI's acquisition of SAB. Therefore, Plaintiffs have failed to adequately allege that there is a reasonable probability that the proposed acquisition will increase ABI's market power.

### b. Plaintiffs' allegations regarding Molson's future conduct in the ownership of MillerCoors are too speculative to state a claim for relief.

"[A]lthough [Section] 7 'was intended to arrest the anticompetitive effects of market power in their incipiency,' the Act does not authorize suits by those whose allegations of threatened injury amount to little more than conjecture." *Sprint Nextel Corp. v. AT& T Inc.*, 821 F. Supp. 2d 308, 317 (D.D.C. 2011) (citations omitted). Plaintiffs allege that given the resulting change in management and Molson's new increased size in the United States market following the acquisition of SAB, Molson's management is likely to have incentives to change distribution and pricing practices to match ABI's. Pl. Compl. ¶¶ 33, 45. These allegations are purely speculative and not supported by any specific facts.

First, Plaintiffs fail to plead facts supporting their claim that Molson will follow ABI's restrictive distribution practices. Plaintiffs claim that just as Constellation began following ABI's pricing strategies after acquiring the United States market share of Modelo, Molson will change its distribution strategies to follow ABI's after this acquisition. Pl. Comp. ¶ 33. However, Plaintiffs fail to explain how Constellation's post-acquisition decision accurately predicts how Molson will do business following this acquisition. Plaintiffs' claim is not based on any specific factual allegation, but merely on an analogy to different companies with different business strategies. Therefore, it is pure speculation that Molson will have incentives to change its distribution practices.

Second, Plaintiffs fail to plead facts supporting their claim that Molson will increase

prices to follow those set by ABI. Currently, an "independent pricing dynamic exists between

ABI and SAB," Pl. Comp. ¶ 24, however, for the "past several years, SAB has followed ABI's

annual price increases to a significant degree," Pl. Compl. ¶ 82. If Molson does not change

SAB's current pricing strategy following the acquisition, Molson will already be following

prices set by ABI, and the prices would stay the same regardless of the acquisition. Moreover,

Molson is not a named party in this action. The speculative allegations about the future conduct

of an unnamed party, especially when such future conduct is unlikely to affect the status quo, are

insufficient to state a claim for relief against ABI.

## c. Plaintiffs' monopsony allegations are vague and do not sufficiently state a plausible claim for relief.

Plaintiffs allege that, following the acquisition of SAB, ABI will have monopsony power

with respect to the purchase of hops and packaging material. Pl. Compl. ¶¶ 53-58. With respect

to hops, there are three problems with Plaintiffs' allegation: (1) Plaintiffs do not define or show

how the transaction will influence the hops market; (2) Plaintiffs' allegations do not support their

"waterbed" theory of harm; and (3) Plaintiffs do not adequately allege an injury based on these

monopsony claims. With respect to packaging materials, Plaintiffs fail to define the aluminum

can market or allege a cognizable injury. For these reasons, Plaintiffs' monopsony allegations

cannot support a Section 7 claim.

First, Plaintiffs fail to identify the scope of the hops market, the geographic market in

which ABI would allegedly have monopsony power, or how the transaction would affect either

market concentration or the combined entity's market share. Plaintiffs allege that ABI "is a

powerful buyer in the bitter hops market" and that, post-acquisition, ABI could "depress prices in

the bitter hops market." Pl. Compl. ¶ 56. Plaintiffs attempt to allege that these depressed prices

Page 8 – REPORT & RECOMMENDATION

would come as a result of ABI demanding, and receiving, lower prices from their hops suppliers. Receiving lower prices on hops would mean ABI's costs to produce its beer would go down. ABI's ability to produce its beer at a lower cost would allegedly cause other beer producers to pressure their own hops suppliers to offer lower prices in order to compete with ABI. However, nowhere in these allegations do Plaintiffs attempt to define the hops market, the geographic scope of the hops market, or the competitors active within it. Plaintiffs likewise do not allege how concentrated the purported hops market is, what percentage of the market ABI or SAB currently enjoy, or how the transaction would affect either market concentration or the combined entity's market share. Plaintiffs' failure to define the hops market and the relevant impact of the acquisition on the hops market is fatal to this claim.

Second, Plaintiffs' "waterbed" theory of harm is not properly supported. Plaintiffs allege that "small buyers like craft brewers" are vulnerable to the "waterbed effect," whereby "a powerful buyer demands lower prices or other concessions from its suppliers, causing the supplier to, in turn, increase prices to smaller buyers." Pl. Compl. ¶ 55. But this proposed effect does not support Plaintiffs' theory of harm because monopsony cases typically concern alleged harm to sellers of the relevant commodity, not to competitors of the monopsonist. Plaintiffs' "waterbed" theory fails because the theory itself is concerned with alleged harm to competitors of ABI post-acquisition, which is inconsistent with typical monopsony claims and has nothing to do with the Plaintiffs themselves.

Further, the proposed "waterbed effect" is inconsistent with Plaintiffs' allegation that efforts by ABI to decrease the price of bitter hops will "cause [United States] farmers to abandon the bitter hops market in favor of more profitable aroma hops," which are the very type of hops used "predominantly by craft brewers." Pl. Compl. ¶ 56. This allegation suggests that hops

producers have the ability to avoid lower prices by switching to more profitable aroma hops, meaning they would avoid Plaintiffs' proposed "waterbed" theory of harm altogether. Plaintiff's allegations are inconsistent and their unsupported "waterbed" theory fails.

Third, Plaintiffs do not allege a cognizable antitrust injury, as they fail to explain how ABI's purported monopsony power threatens to injure Plaintiffs in their capacity as beer consumers. Plaintiffs allege that small beer-producing competitors will face higher prices of aroma hops and shortages of bitter hops, but neither is a threatened injury to Plaintiffs.

Plaintiffs' allegation regarding packaging material is also problematic. Plaintiffs fail to define the relevant market and provide any theory of loss or damage. They allege that "[s]maller buyers are likely to experience delays, poorer terms, and even unavailability" of aluminum cans needed for packaging beer post-acquisition. Pl. Compl. ¶ 58. Plaintiffs claim that Crown Holdings, an aluminum can manufacturer, "recently…dropped both new and existing small craft customers and lengthened lead times, suggesting capacities are becoming limited in the industry." *Id.* at ¶ 57. However, Plaintiffs do not explain how the alleged capacity constraints of a single manufacturer relate to the broader aluminum can market in general. Plaintiffs also do not define the aluminum can market, nor do they to show how Crown Holding's capacity constraints will injure Plaintiffs as beer consumers. For these reasons, Plaintiffs' monopsony allegations fail to state a claim for relief and should be dismissed.

## II.    SAB's Motion to Dismiss should be granted because Section 7 of the Clayton Act only applies to acquirers, not sellers, and SAB is a seller.

Defendant SAB moves this Court to dismiss the Complaint on the basis that Plaintiffs have failed to state a claim under Section 7 of the Clayton Act. Pl. Compl. ¶¶ 33; 99-101. Section 7 provides that "[n]o person engaged in commerce . . . shall acquire . . . the stock or other share capital . . . of another person . . . where . . . the effect of such acquisition may be

Page 10 – REPORT & RECOMMENDATION

substantially to lessen competition, or tend to create a monopoly." 15 U.S.C. § 18. The Ninth Circuit has held that "[b]y its express terms [Section] 7 proscribes only the act of acquiring, not selling . . . ." *United States v. Coca-Cola Bottling Co. of L.A.*, 575 F.2d 222, 227 (9th Cir. 1978) (citing *Dailey v. Quality Sch. Plan, Inc.*, 380 F.2d 484, 488 (5th Cir. 1967)). Numerous courts around the country have reached precisely the same result and held that sellers cannot be liable under Section 7. *See Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 852 (N.D. Cal. 2004); *Berlyn, Inc. v. The Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609, 623 (D. Md. 2001); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 513 F. Supp. 1100, 1329 n.399 (E.D. Pa. 1981).

Congress's intent to hold only sellers liable under Section 7 is clear when compared with Section 3 of the Act. Section 3 makes it "unlawful for any person . . . to lease or make a sale or contract for sale of goods . . . where the effect of such lease, sale or contract for sale . . . may be to substantially lessen competition or tend to create a monopoly in any line of commerce." 15 U.S.C. § 14. The Ninth Circuit interprets Section 3 as "liability in terms of a person who makes a sale or contracts for sale and nowhere provides for liability of the buyer[,]" while Section 7 "applie[s] only to an acquiring corporation and not to the corporation being acquired." *McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 906 (9th Cir. 1968) (citing *Dailey*, 380 F.2d at 488). Had Congress intended Section 7 to apply to sellers, as well as buyers, it would have provided for it expressly within the Act.

While Section 7 applies only to acquirers, courts do make an exception and join sellers "when the plaintiff, usually the federal government, seeks rescission or divestiture and the Court needs jurisdiction over both the buying and selling company in order to fashion such equitable relief pursuant to 15 USC § 25." *Arbitron Co. v. Tropicana Prod. Sales, Inc.*, No. 91 Civ. 3697 (PKL), 1993 WL 138965, at *7 (S.D.N.Y. Apr. 28, 1993). Courts have the authority to exercise

Page 11 – REPORT & RECOMMENDATION

this exception, however, the Ninth Circuit refrains from joining the selling party unless the sale has already been consummated. *See, e.g.*, *Coca-Cola Bottling*, 575 F.2d at 229-30 (allowing joinder because parties had finalized the acquisition and assets had been transferred prior to the government filing the complaint); *Phillips Petroleum Co.*, 367 F. Supp. at 1228-30, 1262 (ordering divestiture after defendant had acquired a division of another oil company), *aff'd*, 418 U.S. 906 (1974).

It is undisputed that SAB is a selling party to this acquisition and the sale has not been consummated. The acquisition of SAB by ABI is pending: no assets have been transferred from SAB to ABI, nor, based on the acquisition plan, will any assets within the United States be transferred from SAB to ABI. Moreover, the proposed acquisition is currently under investigation by the DOJ, and the parties have agreed to not consummate the acquisition until the DOJ provides authorization. Therefore, SAB's Motion to Dismiss should be granted.

## RECOMMENDATION

The Defendants' motions (#41) (#43) should be granted. The Complaint (#1) should be dismissed. This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this ___ day of July, 2016.

MARK D. CLARKE
United States Magistrate Judge

Page 12 – REPORT & RECOMMENDATION