**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES DEHOOG; BRIAN BOUTELLER; SHONNA BOUTELLER; CARLY BOWEN; TOM BUTTERBAUGH; ERICA I. CORONA; MARIA G. CORONA; CHRIS DENNETT; JOHN DESBIENS; MATTHEW JOHNSON; CYNTHIA A. KREITZBERG; EDWARD LAWRENCE; JERUSHA MALAER; ROBERT MALAER; MICHAEL MARTIN; MICHAEL MCATEE; DAVID MILLIGAN; JEFF REEDER; RALPH REEDER; WADE SCAGLIONE; BETH H. SILVERS; BRADLEY O. SILVERS; PATRICE WADE,<br>   *Plaintiffs-Appellants*,<br><br>v.<br><br>ANHEUSER-BUSCH INBEV SA/NV; SABMILLER, PLC,<br>   *Defendants-Appellees.* | No. 16-35912<br><br>D.C. No.<br>1:15-cv-02250-CL<br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted May 15, 2018
Portland, Oregon

| 2 | DEHOOG V. ANHEUSER-BUSCH |
|---|---|

Filed August 8, 2018

Before: M. Margaret McKeown and Richard A. Paez, Circuit Judges, and Cynthia A. Bashant,[*] District Judge.

Opinion by Judge McKeown

**SUMMARY**[**]

**Antitrust**

The panel affirmed the dismissal of an action brought under § 7 of the Clayton Act by consumers and purchasers of beer, seeking to enjoin Anheuser-Busch InBev, SA/NV, from acquiring SABMiller, plc.

As a condition of approving the transaction, the U.S. Department of Justice required SABMiller to divest entirely its domestic beer business. Because the divestiture left SABMiller without a presence in the U.S. beer market, the consumers did not and could not plausibly allege that ABI's acquisition of SABMiller would substantially lessen competition in that market. The panel held that the consumers therefore failed to state a claim under the Clayton Act.

---

[*] The Honorable Cynthia A. Bashant, United States District Judge for the Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

DEHOOG V. ANHEUSER-BUSCH                3

## COUNSEL

Joseph M. Alioto (argued) and Jamie L. Miller, Alioto Law Firm, San Francisco, California; Rachele R. Selvig and Christopher L. Cauble, Cauble and Cauble LLP, Grants Pass, Oregon; Gil D. Messina, Messina Law Firm P.C., Holmdel, New Jersey; Jeffery K. Perkins, Law Offices of Jeffery K. Perkins, Tiburon, California; for Plaintiffs-Appellants.

Yonatan Even (argued), Cravath Swaine & Moore LLP, New York, New York, for Defendants-Appellees.

## OPINION

McKEOWN, Circuit Judge:

This case features a bevy of beer aficionados trying to undo the acquisition of one brewing behemoth by another. James DeHoog and other consumers and purchasers of beer ("Consumers") appeal the district court's dismissal of their private antitrust action to enjoin Anheuser-Busch InBev, SA/NV ("ABI") from acquiring SABMiller, plc ("SAB"). Although the merger closed in October 2016 with the blessing of antitrust authorities, Consumers' private suit persists.

Like the district court, we conclude that Consumers failed to state a claim under Section 7 of the Clayton Act, 15 U.S.C. § 18. As a condition of approving the transaction, the U.S. Department of Justice ("DOJ") required SAB to divest entirely its domestic beer business. Because the divestiture left SAB without a presence in the U.S. beer market, Consumers did not and could not plausibly allege

4          DEHOOG V. ANHEUSER-BUSCH

that ABI's acquisition of SAB would substantially lessen competition in that market.

## BACKGROUND

ABI, whose brands include Budweiser, Stella Artois, and Michelob Ultra, is the largest producer and seller of beer in the United States, comprising roughly 46 percent of the U.S. market share. At the time of this suit, SAB was a multinational brewing company that operated in the United States exclusively through a joint venture with Molson Coors Brewing Company ("Molson").[1] The SAB/Molson joint venture, MillerCoors, LLC ("MillerCoors"), was the second-largest producer and seller of beer in the United States, controlling roughly 25 percent of the U.S. market share.[2]

In November 2015, ABI and SAB announced the terms of a $107 billion acquisition of SAB by ABI. As part of the transaction, ABI also announced a contingent agreement with Molson: upon completion of ABI's acquisition of SAB, SAB would completely divest its interest in MillerCoors. Per the terms of the agreement, Molson would acquire SAB's 50 percent voting interest and 58 percent economic interest in MillerCoors, making MillerCoors a wholly-owned subsidiary of Molson. Molson would maintain full control of the business operations and resulting economic benefits of MillerCoors. In short, ABI would acquire SAB

---

[1] Molson, the world's third largest brewer, is not a defendant.

[2] SAB and Molson each held 50 percent of the governance rights in MillerCoors. The DOJ approved the MillerCoors joint venture in 2008. MillerCoors brands include Miller Lite, Coors Light, Blue Moon, and Zima.

DEHOOG V. ANHEUSER-BUSCH 5

but not before spinning off SAB's ownership in MillerCoors (i.e., SAB's U.S. interests) to Molson.

After reviewing the proposed transaction for its effect on competition, on July 20, 2016, the DOJ reached a settlement with ABI to allow the acquisition to move forward. ABI was required to divest SAB's entire U.S. business—including SAB's ownership in MillerCoors—such that the settlement would "prevent any increase in the concentration in the U.S. beer industry." The settlement also prohibited ABI from acquiring beer distributors or brewers without allowing for DOJ review of the acquisition's likely competitive effects and prevented ABI from engaging in certain anti-competitive practices. According to the DOJ, the settlement would "help preserve and promote competition" in the U.S. beer industry.

That same day, the DOJ Antitrust Division filed a civil lawsuit against ABI in the U.S. District Court for the District of Columbia to block the transaction, on the ground that the acquisition violated Section 7 of the Clayton Act, along with the proposed settlement, which—if approved by the court—"would resolve the competitive harm alleged in the lawsuit."[3] The filings complied with the requirements of the Antitrust Procedures and Penalties Act ("the Tunney Act"), a part of the federal government's review of certain mergers and acquisitions. 15 U.S.C. § 16. Pursuant to the Tunney Act, the DOJ published the terms of the settlement and a competitive impact statement in the Federal Register and gave the public 60 days to submit comments. *Id.* § 16(d).

---

[3] See United States v. Anheuser-Busch InBev SA/NV, No. 1:16-cv-01483 (D.D.C.).

After consideration of the public comments, the DOJ and several international competition authorities cleared the transaction, which closed on October 10, 2016. Molson then promptly announced that it had completed its acquisition of SAB's interest in MillerCoors. At the time of this opinion, one Tunney Act procedure remains outstanding: the U.S. District Court for the District of Columbia must determine whether entry of the settlement "is in the public interest." *Id.* § 16(e). In making that determination, the court may "take such other action in the public interest as the court may deem appropriate." *Id.* § 16(f).

Parallel to the government's antitrust enforcement efforts, on December 1, 2015, Consumers filed a private antitrust action against ABI and SAB in the District of Oregon, seeking to enjoin the acquisition.[4] Consumers likewise alleged that the proposed acquisition violated Section 7 of the Clayton Act, "in that the effect of the proposed acquisition may be substantially to lessen competition, or to tend to create a monopoly in the production and sale of beer in the United States." More specifically, Consumers alleged that the acquisition threatened to cause them "loss and damage in the forms of higher prices, fewer services, fewer competitive choices, diminished product quality and product diversity, [and] suppression and destruction of smaller competitors through exclusive distribution arrangements . . ." Consumers further claimed that the acquisition would "increase ABI's buying power" globally. Although Molson was not a named defendant, Consumers made a corollary allegation regarding Molson's acquisition of SAB's interest in MillerCoors: "Given the resulting change in management and Molson's

---

[4] Consumers are "twenty-three consumers and purchasers of beer in the United States" who reside in Oregon, California, and Washington.

new increased size and scope in the United States market following the ABI-SAB acquisition, Molson's management is likely to have incentives to change its practices to match ABI's."

The district court dismissed the complaint for failure to state a claim. The court found that Consumers failed to allege that the acquisition would increase ABI's market power in the U.S. beer market; allegations regarding Molson's future conduct in the ownership of MillerCoors were too speculative to state a claim for relief against ABI; and allegations concerning ABI's buying power were too vague to state a plausible claim. In dismissing with prejudice, the court concluded that any amendment to the complaint would be futile because Consumers "cannot plausibly allege that the challenged transaction will increase either ABI's market share or the concentration of firms in the U.S. beer market." By securing the complete divestiture of MillerCoors, the DOJ had reached a settlement to prevent increased concentration in the U.S. beer industry.

## ANALYSIS

This appeal centers on a longstanding antitrust law that empowers the public to sue to block allegedly anticompetitive mergers. Section 7 of the Clayton Act generally prohibits business acquisitions whose effect "may be substantially to lessen competition, or tend to create a monopoly" in a relevant market. 15 U.S.C. § 18. In addition, "[a]ny person" may "sue for and have injunctive relief . . . against threatened loss or damage by a violation of" Section 7, as long as the standard equitable principles for injunctive relief are met. *Id.* § 26.

## I. CONSUMERS FAILED TO STATE A CLAIM UNDER THE CLAYTON ACT

Our de novo review of a dismissal under Federal Rule of Civil Procedure 12(b)(6) is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court has taken judicial notice. *See Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).[5] We benchmark Consumers' claims against the now-familiar standard of *Twombly* and *Iqbal*: "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Section 7 of the Clayton Act requires Consumers to "first establish a prima facie case that a merger is anticompetitive." *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015). In practical terms, this means adequately alleging facts that an acquisition creates "an appreciable danger" or "a reasonable probability" of anticompetitive effects in the relevant market. *Id.* at 788; *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984).[6] Consumers' allegations do not belly up to this bar.

---

[5] Consumers' motion to take judicial notice of government documents, court filings, press releases, and undisputed matters of public record concerning the ABI-SAB transaction (Dkt. No. 17) is granted.

[6] The parties agree that the relevant product market is the production and sale of beer, and the relevant geographic market is the United States.

### A. Because of the Divestiture, ABI Did Not Acquire an Actual Competitor in the U.S. Beer Market

Consumers' frontline allegations are that the acquisition eliminated SAB as an "actual . . . competitor in the United States." But as the district court correctly found, ABI's acquisition of SAB did not create a reasonable probability of anticompetitive effects in the U.S. beer market because ABI did not acquire any business interests in the U.S. beer market. Pre-transaction, SAB operated in the United States exclusively through its joint venture MillerCoors. As a condition of closing the acquisition, SAB divested completely its interests in MillerCoors to Molson. By requiring full divestiture of SAB's U.S. interests, the DOJ ensured that the acquisition will not create "any increase in the concentration in the U.S. beer industry."

Faced with a similar ABI acquisition, we recently affirmed dismissal of a Section 7 suit for failure to state a claim, albeit in an unpublished disposition. *See Edstrom v. Anheuser-Busch InBev SA/NV*, 647 F. App'x 733 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 258 (2016).[7] In that case, beer purchasers sought to enjoin ABI and Constellation Brands, Inc. ("Constellation") from acquiring Grupo Modelo S.A.B. de C.V. ("Modelo"). Under the terms of that agreement, "ABI would purchase Modelo but grant Constellation an irrevocable, exclusive license to import Modelo brands into the United States." *Id.* at 735. ABI retained no right to sell Modelo beer in the United States. *Id.* Because "the

---

[7] Although our decision in *Edstrom* is not precedential and we do not rely on it here, it is instructive as to the reality of a transaction where ABI acquired no interests in the U.S. market. *See* Ninth Circuit Rule 36-3.

challenged transaction d[id] not increase ABI's market share or the concentration of the U.S. beer market," we concluded that "Plaintiffs failed to plausibly allege a prima facie case that the challenged transaction is anticompetitive." *Id.* So too, here. The challenged transaction did not increase ABI's market share because ABI acquired no interests in the United States. The concentration of the U.S. beer market stayed precisely the same because MillerCoors remained in the market as a competitor (with SAB's share transferred fully to Molson).

Since SAB did not compete in the market before the transaction except *as* MillerCoors, and MillerCoors still competes in the market, Clayton Act cases addressing the elimination of an actual competitor in a relevant market—and a concomitant increase in market concentration—are inapposite.[8] Consumers argue that these cases "establish the illegality of any nontrivial acquisition of a competitor, whether or not the acquisition was likely either to bring about or shore up collusive or oligopoly pricing" in a highly concentrated market like the U.S. beer market. *See Hospital Corp of America v. FTC*, 807 F.2d 1381, 1386 (7th Cir. 1986). Yet with the exception of the potential competitor cases, discussed below, Consumers' cited cases involve the removal of an actual competitor *from the relevant market*. MillerCoors remains as a competitor in the market.

---

[8] *See, e.g.*, *United States v. Pabst Brewing Co.*, 384 U.S. 546, 550 (1966) (merger of "two very large brewers competing against each other in 40 States"); *United States v. Von's Grocery Co.*, 384 U.S. 270, 277 (1966) (merger of "two of the most successful and largest [grocery stores] in the area" to create the second largest grocery store in Los Angeles); *United States v. Aluminum Co. of Am.*, 377 U.S. 271, 281 (1964) (acquisition of "an aggressive competitor" in the same market).

### B. ABI DID NOT ACQUIRE A POTENTIAL COMPETITOR "POSITIONED AT THE EDGE OF THE MARKET, CONTINUALLY THREATENING TO ENTER"

Recognizing the reality that ABI did not acquire an actual competitor, Consumers claimed in summary fashion that the acquisition would eliminate SAB as a "*potential* competitor." (Emphasis added). The claim is doomed from the start because the potential competitor theory lacks factual allegations in the complaint. Indeed, by alleging that ABI and SAB were actual competitors, Consumers undermine their assertion that the brewers were potential competitors. Taking Consumers' factual allegations as true, as we must at this stage, SAB was not a potential competitor with ABI. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) (we accept as true all factual allegations in the complaint, but "do[] not have to accept as true conclusory allegations in a complaint"). Instead, before the transaction and divestiture, SAB was an actual competitor through its joint venture MillerCoors.

Consumers' effort on appeal to recast SAB as a "potential competitor . . . so positioned on the edge of the market that it exerted beneficial influence on competitive conditions in the market" fails. *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 532–33 (1973). SAB was not poised on the edge of the market "continually threatening to enter." *United States v. Penn-Olin Chem. Co.*, 378 U.S. 158, 173 (1964). Nor was SAB "eager[] to enter that market." *United States v. El Paso Nat. Gas Co.*, 376 U.S. 651, 660 (1964). SAB had already entered the market, through the MillerCoors joint venture. SAB's beneficial influence on competitive conditions in the market thus was *through* MillerCoors, an entity still competing in the market today.

Consumers did not allege in their complaint that SAB was a potential competitor because of "the ever-looming threat of the possible end of the [SAB-Molson] joint venture [MillerCoors] and the resulting re-entry of the parents." But such a claim also would be futile because allegations regarding the potential dissolution of MillerCoors and its competitive effects would be entirely speculative. *See Twombly*, 550 U.S. at 555.

### C. ALLEGATIONS CONCERNING THE NEW MILLERCOORS' DISTRIBUTION PRACTICES ARE TOO SPECULATIVE TO STATE A CLAIM

Consumers make one last speculative argument: Post-transaction, MillerCoors—now a wholly-owned subsidiary of Molson—will adopt the distribution practices of ABI. Consumers provide no support for that assertion.[9] Merely stating that "it is likely that a 100 percent Molson Coors-owned MillerCoors will follow ABI's lead in its dealings with distributors," without more, is insufficient. *See Iqbal*, 556 U.S. at 678 (emphasizing that "labels and conclusions" are not enough to survive a motion to dismiss). This

---

[9] After briefing on the motion to dismiss, Consumers filed a supplemental declaration with an attached letter written by the American Antitrust Institute regarding potential post-merger coordination in the U.S. beer market. That letter was not incorporated into the complaint. Regardless, the letter was addressed to the DOJ Antitrust Division to encourage the agency to order pro-competitive remedies if it approved the merger, some of which the DOJ adopted in its settlement agreement with ABI. *See* Press Release, U.S. Dep't of Justice, Justice Department Requires Anheuser-Busch InBev to Divest Stake in MillerCoors and Alter Beer Distributor Practices as Part of SABMiller Acquisition (July 20, 2016), *available at* https://www.justice.gov/opa/pr/justice-department-requires-anheuser-busch-inbev-divest-stake-millercoors-and-alter-beer.

allegation is a classic speculative conclusion. General allegations regarding past acquisitions in the market, which prompted distinct DOJ remedies, do not alter the equation. The bottom line is that the complaint offers only speculation as to how a MillerCoors operated solely by Molson, as opposed to by Molson and SAB, will do business.[10]  Such speculation "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (alteration and internal quotation marks omitted).[11]

In view of our conclusion that Consumers do not have a viable Clayton Act claim, we need not reach Consumers' claim for injunctive relief.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE COMPLAINT WITH PREJUDICE

The only remaining question is whether Consumers' complaint could be "saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Ultimately, the district court did not abuse its discretion in concluding that Consumers could not plead around the elephant in the room. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 655–56 (9th Cir. 2017). Since SAB divested its interests in the U.S. beer market, the transaction could not increase ABI's market share or the concentration of that market.  As the district court aptly observed, the DOJ

---

[10] Molson is not a defendant in this action. But if Molson conducts its MillerCoors business in the U.S. beer market in violation of the antitrust laws, it does so at the risk of private and public antitrust enforcement suits.

[11] Consumers do not appeal the district court's decision that allegations about ABI's buying power are too speculative.

reached a settlement to "prevent increased concentration" in the market. While Consumers contend that the settlement only partially remedies their alleged injuries, they curiously did not submit public comments opposing the settlement, as they were entitled to do. *See* 15 U.S.C. § 16(d).

Consumers' new arguments on appeal underscore that any amendment to their complaint would be futile. Consumers argue that they would add factual allegations regarding SAB's role in the relevant market managing MillerCoors as a joint venture, or (perhaps contradicting themselves), on the "edge of the market." Given the legal deficiencies in applying the "actual competitor" and "potential competitor" theories to the present facts, further allegations would not salvage the complaint.

Consumers also assert that they would add allegations regarding the closing of a MillerCoors brewery in Eden, North Carolina in September 2015. According to Consumers, the shuttered brewery once brewed on a contract basis for competitor Pabst and its closure "increased market concentration to presumptively illegal levels." However, Consumers do not explain why a brewery closed by MillerCoors months *before* ABI announced its proposed acquisition of SAB has anything to do with the merger, as opposed to being merely the product of MillerCoors' independent business judgment. The weakness of these proposed amendments underscores that the district court was within its discretion to dismiss the complaint with prejudice.

**AFFIRMED.**